# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT ELBURN, derivatively on behalf of INVESTORS BANCORP, INC., and individually and on behalf of himself and all other similarly situated stockholders of INVESTORS BANCORP, INC., | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **C.A. No. 2019-0774-JRS** |
| ROBERT C. ALBANESE, DENNIS M. BONE, DOREEN R. BYRNES, DOMENICK A. CAMA, PETER H. CARLIN, WILLIAM V. COSGROVE, KEVIN CUMMINGS, JAMES J. GARIBALDI, MICHELE N. SIEKERKA, PAUL N. STATHOULOPOULOS and JAMES H. WARD III, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| INVESTORS BANCORP, INC., a Delaware corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

## ORDER REFUSING DEFENDANTS' APPLICATION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER SUPREME COURT RULE 42

WHEREAS, Plaintiff, Robert Elburn, filed a Complaint asserting derivative claims and a direct claim on behalf of himself and a putative class of stockholders of Investors Bancorp, Inc. ("Investors Bancorp" or the "Company"), in which he alleged the Defendants, each a member of the Company's Board of Directors (the "Board"), approved compensation awards in breach of their fiduciary duties (D.I. 1);

WHEREAS, Defendants moved to dismiss the Complaint for failure adequately to plead demand futility under Court of Chancery Rule 23.1 and failure to state a viable claim under Court of Chancery Rule 12(b)(6) (D.I. 10);

WHEREAS, this Court issued a Memorandum Opinion, dated April 21, 2020 (D.I. 37), denying the Defendants' Motion to Dismiss upon concluding Plaintiff's Complaint had stated a claim for breach of fiduciary duty and had sufficiently alleged demand futility under Rule 23.1 because it pled, with particularity, sufficient facts to raise a reasonable doubt that a majority of the Board would have been able impartially to consider a litigation demand (the "Opinion")[1];

---

[1] *Elburn v. Albanese*, 2020 WL 1929169 (Del. Ch. Apr. 21, 2020) (hereinafter the "Opinion"). Capitalized terms in this Order assume the same meaning as the Opinion unless otherwise defined.

1

WHEREAS, on July 2, 2020, Defendants timely filed an application for certification of an interlocutory appeal of the Opinion (the "Application") (D.I. 42)[2];

WHEREAS, the Application asserts five grounds for interlocutory appeal under Supreme Court Rule 42: (1) the Opinion "resolved important questions of first impression[,]"—relying on Supreme Court Rule 42(b)(iii)(A)[3]; (2) the Opinion conflicts with other decisions of this court and the Supreme Court—relying on Supreme Court Rule 42(b)(iii)(B)[4]; (3) the Opinion relates to the construction of a Delaware statute—relying on Supreme Court Rule 42(b)(iii)(C)[5]; (4) the Opinion "sustained the controverted jurisdiction" of this court—relying on Supreme Court Rule 42(b)(iii)(D)[6]; and (5) interlocutory review of the Opinion would "serve considerations of justice"—relying on Supreme Court Rule 42(b)(iii)(H)[7];

WHEREAS, on July 13, 2020, Plaintiff opposed the Application (D.I. 44); and

---

[2] The Application was timely under the Supreme Court of Delaware's Order, dated June 5, 2020, extending deadlines to accommodate litigants as part of the Judicial Emergency declaration relating to the COVID-19 pandemic.

[3] Application at 7.

[4] Application at 7–12.

[5] Application at 12.

[6] Application at 12–13.

[7] Application at 13.

WHEREAS, the Court has thoroughly reviewed the Application, Plaintiff's response and the criteria set forth in Supreme Court Rule 42;

**IT IS HEREBY ORDERED**, this 21st day of July, 2020, that:

1.      Supreme Court Rule 42 provides that "[n]o interlocutory appeal will be certified by the trial court or accepted by th[e] [Supreme] Court unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[8]  With this limitation in mind, "[i]nterlocutory appeals should be exceptional, not routine, because they disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[9]  Indeed, "parties should only ask for the right to seek interlocutory review if they believe in good faith that there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal."[10]

2.      Rule 42(b)(iii) lists the factors the trial court should consider in deciding "whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice.  If the

---

[8] Supr. Ct. R. 42(b)(i).

[9] Supr. Ct. R. 42(b)(ii).

[10] *Id.*

balance is uncertain, the trial court should refuse to certify the interlocutory appeal."[11]

3.    "[T]he purpose of [Supreme Court] Rule 42 is to prevent wasteful piecemeal litigation from overwhelming the docket of the Supreme Court."[12] And Delaware courts operate under "a strong presumption against granting certification of an interlocutory appeal if it will lead to piecemeal litigation."[13]

4.    After careful review, I am satisfied the Opinion does not decide a substantial issue of material importance such that appellate review of the Opinion before final judgment "would serve considerations of justice."[14] Specifically, it did not resolve an issue of first impression, it is not in conflict with precedent and interlocutory review would likely result in piecemeal litigation. Accordingly, I cannot certify that the benefits of an interlocutory appeal outweigh the costs. The Application's contrary arguments are unpersuasive for the following reasons.

5.    *First*, the Opinion does not decide an issue that "relate[s] to the merits of the case."[15] As the Opinion made abundantly clear, it was not deciding whether

---

[11] Supr. Ct. R. 42(b)(iii).

[12] *Stein v. Blankfein*, 2019 WL 3311227, at *1 (Del. Ch. July 23, 2019).

[13] *In re TransPerfect Glob., Inc.*, 2019 WL 6130807, at *4 (Del. Ch. Nov. 18, 2019).

[14] Supr. Ct. R. 42(b)(iii)(H).

[15] *Castaldo v. Pittsburgh-Des Moines Steel Co., Inc.*, 301 A.2d 87, 87 (Del. 1973) ("Generally speaking, the substantive element of the appealability of an interlocutory order

Defendants' compensation awards *actually* resulted from an improper *quid pro quo* arrangement.[16] It simply concluded that Plaintiff's Complaint, backed by well-pled particularized facts, stated that such an agreement existed and these allegations supported a finding of demand futility.[17] The Supreme Court has previously found interlocutory review to be inappropriate where "no final determination was being made on the merits of plaintiff's claims, but only that plaintiff would be afforded the right to pursue discovery related to the allegations of the complaint."[18] That is precisely what the Opinion found here.[19]

---

must relate to the merits of the case . . . ."); *Levinson v. Conlon*, 385 A.2d 717, 720 (Del. 1978) (holding that interlocutory rulings "on the pleadings" should rarely give rise to interlocutory appeals since they rarely "establish a legal right between the parties").

[16] Opinion at *9 ("I acknowledge that Defendants have wholeheartedly denied that any *quid pro quo occurred* . . . Targeted discovery is likely to reveal rather quickly if the *quid pro quo* arrangement alleged in the Complaint was actually reached. If it was not, Defendants are likely to earn summary judgment.").

[17] *Id.*

[18] *Fuqua Indus., Inc. v. Lewis*, 504 A.2d 571 (Del. 1986) (TABLE) (refusing interlocutory appeal). *See also Musk v. Arkansas Teacher Ret. Sys.*, 184 A.3d 1292 (Del. 2018) (refusing interlocutory appeal where, on a motion to dismiss, the trial court determined that plaintiff had met its burden of pleading facts that allowed a reasonable inference that the company's CEO was a controlling stockholder but also acknowledged that discovery might reveal otherwise).

[19] Opinion at *9.

6.     *Second*, Defendants argue the Opinion decided an issue of first impression, warranting interlocutory review.[20]  I disagree.[21]  There was absolutely nothing unusual about the demand futility allegations addressed by the Opinion, or the means by which the Opinion addressed them.[22]  Determining the sufficiency of demand futility allegations is steady grist for the Chancery mill.[23]  Apparently recognizing this reality, and attempting to make more of the Opinion than is justified, Defendants seize on the fact that the Court chose to "dilate on Rule 23.1's"

---

[20] Application at 7 (arguing that the Court's reliance upon Rule 9(b) jurisprudence in the Rule 23.1 context decided an issue of first impression).

[21] Trial judges confront motions for reargument, applications for certification of an interlocutory appeal and appeals from final judgments as a matter of course, and it is rare that a trial judge will express any particular reaction to such filings beyond his ruling on the merits.  Occasionally, however, a filing will prompt an additional reaction.  *See, e.g.*, *In re Pure Res., Inc.*, 2002 WL 31357847, at *1, n.1 (Del. Ch. Oct. 9, 2002) (Strine, V.C.) (expressing "dismay" at the manner in which the court's opinion was characterized in an application for certification of an interlocutory appeal).  I do not express "dismay" here.  I do acknowledge some disappointment, however, that Defendants have characterized the Opinion as having endorsed some radical departure from well-settled standards for reviewing the sufficiency of demand futility allegations within derivative complaints under Court of Chancery Rule 23.1.  As explained below, no such departure was endorsed or effectuated here.

[22] *See generally*, *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984).

[23] One month of the court's written Rule 23.1 output illustrates the point.  *See, e.g.*, *In re GoPro, Inc.*, 2020 WL 2036602 (Del. Ch. Apr. 28, 2020); *Hughes v. Xiaoming Hu*, 2020 WL 1987029 (Del. Ch. Apr. 27, 2020); *Shabbouei v. Potdevin*, 2020 WL 1609177 (Del. Ch. Apr. 2, 2020); *Buckley Family Trust v. McCleary*, 2020 WL 1522549 (Del. Ch. Mar. 31, 2020).

6

particularity standard before it addressed the sufficiency of Plaintiff's pleading.[24]

While it is true the Opinion identified some guideposts that might be useful as our courts traverse Rule 23.1's "with particularity" landscape, the Opinion ultimately applied settled law to the specific allegations in the Complaint to conclude that Plaintiff had well-pled—under any definition of particularity—that a majority of the demand board faced a substantial likelihood of liability, such that demand was futile.[25]

---

[24] Opinion at *7.

[25] Opinion at *9. As explained in the Opinion, Plaintiff alleges Defendants negotiated a settlement of separate breach of fiduciary duty claims pending against them in this court arising from excessive awards issued under an Equity Incentive Plan ostensibly by keeping most of their own awards, but cancelling substantial awards made to two employee Directors. In reality, however, it is alleged the Defendants had agreed with the two employee Directors (also Defendants) prior to the consummation of the settlement to make new, nearly identical awards to them after the settlement was approved by the Court (the so-called "Replacement Awards"). Opinion at *9. As found in the Opinion, the Complaint pled with particularity the existence of an "illicit *quid pro quo* arrangement that led to the Replacement Awards." *Id.* The Complaint also pled, "*when* the alleged misconduct occurred, *who* allegedly participated and *what* motivated the nonemployee directors to breach their fiduciary duties." *Id.* In reaching this conclusion, the Court considered the extent to which Delaware's Rule 9(b) jurisprudence (relating to that rule's "with particularity" requirement) might offer insight when applying Rule 23.1's identical "with particularity" language. Opinion at *7. The Court embarked on this analytical excursion in reaction to Defendants' argument that the Complaint failed to meet Rule 23.1's pleading standard because Plaintiff had "failed to present **any** particularized facts to suspect that the Individual Defendants entered into a *quid pro quo* arrangement to [make the Replacement Awards]." *See* Opening Brief in Support of the Defendants' Motion to Dismiss Counts I and II of the Verified Stockholder Derivative and Class Action Complaint (D.I. 13), at 45 (emphasis supplied). That argument, in my view, was provocative given that Plaintiff had alleged, *inter alia*: "As described above, each of these directors were able to retain a substantial portion of their challenged awards only because Cummings and Cama had agreed to forfeit *all* of their awards as part of the Settlement. As it turned out, Cummings and Cama's agreement came with strings attached: Before agreeing to the Settlement,

7

7.     *Third*, Defendants argue the Opinion improperly conflated Rule 8(a)'s notice pleading standards with Rule 23.1's particularity requirement, in defiance of well-settled Delaware law.[26] Here again, Defendants misconstrue the Opinion. Indeed, the Opinion made clear that the "stringent requirements of factual particularity [within Rule 23.1] [] differ substantially from . . . permissive notice pleadings."[27] And then, in an attempt to clarify Rule 23.1's oft-repeated "particularity" standard, the Opinion recognized that the pleading standards for fraudulent omission cases (where "particularity" is also required by our rules) could serve as useful "guideposts" when considering the sufficiency of factual allegations in the Rule 23.1 context, particularly where, as here, the stockholder plaintiff would have no means of knowing the so-called "newspaper facts" related to the alleged wrongdoing (i.e., the specific "who, what, when, where and how").[28] As explained above, after making these observations, the Opinion went on to assess the allegations in the Complaint to determine if they pled the formation of an illicit *quid pro quo*

---

Cummings and [Cama] sought, and received, an undisclosed assurance from the Board's non-employee directors that they would 'replace' the awards Cummings and Cama were agreeing to give up, in an amount acceptable to Cummings and Cama." Compl. ¶ 100.

[26] Application at 8–9.

[27] Opinion at *6 (quoting *In re LendingClub Corp. Deriv. Litig.*, 2019 WL 5678578, at *6 (Del. Ch. Oct. 31, 2019)).

[28] Opinion at *8, *9.

8

agreement with the requisite particularity, in part by referencing the Rule 9(b) "particularity" guideposts.[29] Nowhere did the Opinion apply Rule 8(a) or even remotely suggest that the lower "notice pleading" standard codified in that rule has any place in the Rule 23.1 demand futility analysis.

8.  In a similar vein, Defendants argue the Opinion "blindly accept[ed] conclusory allegations unsupported by specific facts."[30] This point simply rehashes the arguments Defendants made in support of their Motion to Dismiss that the Opinion considered and rejected. Given the frequency with which defendants in derivative litigation label the complaint's allegations as "conclusory," the Opinion sought to shed some light on what separates specifically pled facts from conclusory allegations.[31] After undertaking that analysis, the Opinion identified the well-pled, particularized facts in the Complaint that supported Plaintiff's claims and rejected Defendants' arguments that Plaintiff's allegations were conclusory.[32] There was nothing unusual or groundbreaking about that process or conclusion.

9.  *Fourth*, Defendants argue the Opinion improperly ignored the rule that "a plaintiff asserting demand futility based on directors' alleged involvement in

---

[29] *Id.* at *9.

[30] Application at 8 (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010)).

[31] Opinion at *2, *7–9.

[32] *Id.* at *9.

claimed misconduct must plead particularized facts showing not just a claim against the defendant directors—but also that a majority of the board faces 'a substantial likelihood' of liability for the claim or lacks independence from a defendant who does."[33] This argument is unfortunate given that the Opinion explicitly recognized the importance of the demand futility paradigm.[34] It then described, at some length, how the Complaint laid out the manner in which each Defendant (comprising a majority of the Board) participated in the alleged *quid pro quo* arrangement, and, accepting those particularized allegations as true,[35] explained the bases for the Court's reasonable doubt that a majority of the Board could impartially consider a litigation demand.[36]

10.    *Fifth*, Defendants argue the Court improperly lowered the operative pleading standards "to address a derivative plaintiff's supposed inability to obtain pre-complaint discovery."[37] This was error, Defendants argue, because our law

---

[33] Application at 10–11.

[34] Opinion at *6 (observing that, under our law, directors, not stockholders, manage a company's litigation asset and, therefore, stockholders who seek to wrest control of that asset away from the board of directors must meet "the stringent requirements" of Rule 23.1, including a demonstration within the derivative complaint that a majority of the board is not fit to consider a litigation demand) (citations omitted).

[35] *Rales v. Blasband*, 634 A.2d 927, 931 (Del. 1993).

[36] Opinion at *9.

[37] Application at 11.

encourages potential derivative plaintiffs to utilize the "tools at hand," including 8 *Del. C.* § 220, to close this pre-litigation information gap.[38]   Once again, Defendants proffer an unfair, alarmist reading of the Opinion.

11.    In encouraging the Court to dismiss Plaintiff's derivative Complaint, Defendants maintained that Rule 9(b)'s "newspaper facts" pleading standard should also apply to derivative suits.[39]  In other words, Defendants argued the Complaint failed to plead demand futility because Plaintiff could not identify the specifics of who said what to whom, and specifically when they said it, when formulating the alleged *quid pro quo* agreement related to the Replacement Awards.  The Opinion rejected that position because, "[e]ven with Section 220 documents in hand, derivative plaintiffs would be hard pressed to plead [] 'who, what, when, where and how' facts about fiduciary wrongdoing [of the nature alleged here]."[40]  The Opinion made this observation not as a justification to shirk precedent and lower the settled pleading standards, but as a basis to reject Defendant's proffered (and extra-heightened) Rule 23.1 pleading burden.

12.    Additionally, the particular circumstances of this case likely would have caused any useful information in a Section 220 document production to be

---

[38] *Id.*

[39] Opinion at *7.

[40] *Id.* at *8.

buried under a sea of redactions. As pled, the decision to grant the Replacement Awards was made "with the assistance of [the Defendants'] independent legal advisor . . . ."[41] Counsel was also intimately involved in advising the Board regarding the settlement of the breach of fiduciary duty litigation pending against them that prompted the alleged illicit *quid quo pro* arrangement.[42] Under these circumstances, the notion that a Section 220 demand would have allowed Plaintiff to uncover facts that he could use to plead a more robust derivative complaint blinks at reality; Defendants would have almost certainly redacted anything substantive in their 220 production under an attorney-client privilege stamp.

13. *Sixth*, Defendants argue an interlocutory appeal is appropriate because resolution of the appeal could terminate the litigation.[43] But, Plaintiff's Complaint also asserts a direct disclosure claim that is pending and presumably proceeding to discovery.[44] The legal issues Defendants seek to press on appeal have no bearing on the factual determinations required to adjudicate that direct claim. The outcome of the appeal, therefore, will not be case dispositive.[45] Rather, the certification of this

---

[41] Compl. ¶ 60.

[42] Compl. ¶¶ 38–59.

[43] Application at 12 (quoting Supr. Ct. R. 42(b)(iii)(D)).

[44] Opinion at *10–11.

[45] Supr. Ct. R. 42(b)(iii)(D),(G). *See also Fuqua Indus.*, 504 A.2d at 571 (refusing interlocutory appeal of a motion to dismiss where resolution of the appeal likely would not

interlocutory appeal would do nothing more than facilitate wasteful piecemeal litigation.[46]

14.     Under these circumstances, I cannot certify that the likely benefits of an interlocutory appeal outweigh the probable costs, such that interlocutory review is in the interests of justice.    Defendants' application for certification of an interlocutory appeal, therefore, must be **REFUSED**.


                                        ___*/s/ Joseph R. Slights III*___
                                                 Vice Chancellor

---

end the litigation); *Murphy v. Berlin*, 1999 WL 1223001, at *1 (Del. Super. Ct. Nov. 18, 1999) (Quillen, J.) (same).

[46] *Stein*, 2019 WL 3311227, at *1.